IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Willie James Lenard, ) | |
| ) | C/A No. 3:11-1574-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| Robert Scott, individually, and Leon Lott, ) | |
| in his official capacity as Sheriff of ) | |
| Richland County, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

On April 12, 2011, Plaintiff Willie James Lenard filed a complaint in the Court of Common Pleas for Richland County, South Carolina, alleging injuries as the result of an incident involving Richland County Deputy Sheriffs Robert Scott and David Fairbanks. Plaintiff asserted causes of action (1) pursuant to 42 U.S.C. § 1983 for lack of probable cause to arrest and use of excessive force during the arrest, in violation of his Fourth Amendment rights (First Cause of Action as to Defendant Scott); and claims under the South Carolina Tort Claims Act for (2) battery (Second Cause of Action as to Defendant Scott); (3) abuse of process (Third Cause of Action as to Defendant Scott); (4) intentional infliction of emotional distress (Fourth Cause of Action as to Defendant Scott); (5) defamation and defamation per se (Fifth Cause of Action as to Defendant Scott and Deputy Fairbanks); (6) civil conspiracy (Sixth Cause of Action as to Defendant Scott and Deputy Fairbanks); (7) malicious prosecution (Seventh Cause of Action as to all Defendants): and (8) gross negligence (Eighth Cause of Action as to all Defendants). Plaintiff seeks actual and punitive damages.

Defendants removed the case to this court on June 27, 2011 on the basis of federal question

jurisdiction. See 28 U.S.C. § 1331. On December 5, 2011, Plaintiffs filed an amended complaint in which they dropped all claims against Deputy Fairbanks as well as their Third, Fourth, Sixth, and Eighth Causes of Action. Thus, Plaintiff alleges Fourth Amendment claims under § 1983 for deprivation of his constitutional rights, as well as for his state law causes of action for battery, defamation, and malicious prosecution.

This matter is before the court on Defendants' motion for summary judgment, which motion was filed June 4, 2012. Plaintiff filed a response in opposition to Defendants' motion on June 20, 2012, to which Defendants filed a reply on July 2, 2012. The court held a hearing on November 8, 2012, at which time the court granted Defendants' motion for summary judgment as to Plaintiff's claims for lack of probable cause, malicious prosecution, and defamation. The court denied Defendants' motion for summary judgment as to Plaintiff's claims for excessive force and battery. The within order sets forth the court's reasoning, as required by Fed. R. Civ. P. 56(a).

## I. FACTS

Plaintiff is a retired veteran of the South Carolina Department of Corrections and a former reserve deputy with the Richland County Sheriff's Department. Plaintiff alleges that he was traveling on Hardscrabble Road in Columbia, South Carolina when he saw a pedestrian lying in the roadway. Plaintiff alleges that he stopped his vehicle and learned that the pedestrian had been hit by a passing vehicle. Plaintiff assisted the pedestrian until emergency responders, including EMS personnel, Deputy Fairbanks, and Defendant Scott, arrived at the scene. At this point, the Columbia

Fire Department took charge of the emergency performance.[1]  Plaintiff alleges that he stepped back from the scene once the responders arrived and continued to watch the events transpire.

Plaintiff alleges that the EMS worker did not appear to offer additional medical assistance other than applying a neck brace.  Deposition of Willie James Lenard (Pl. Dep.) 42 (ECF No. 37-4).  Believing the pedestrian to be in critical condition, Plaintiff verbally questioned the EMS workers' actions from a distance of about twelve to fourteen feet.  Id. at 42-44, 59.  One of the responders directed Defendant Scott to remove Plaintiff from the area.  Id. at 65.  Defendant Scott instructed Plaintiff to back farther away from EMS personnel.  Id. at 100.  Plaintiff moved back another four or five feet in compliance with Defendant Scott's directive.  Id.  Defendant Scott instructed Plaintiff to move farther away.   Plaintiff asked Defendant Scott how far he was to move back.  Id. at 102.  Defendant Scott replied for Plaintiff to move or he would deploy a taser.  Plaintiff then asked Defendant Scott what he had done to be threatened with a taser.  Id. at 103-04.  Defendant Scott made an attempt to grab Plaintiff's arm, but Plaintiff moved his arm away and then moved to the right.  Id. at 111-12.  Defendant Scott deployed his taser and shot Plaintiff three times, incapacitating

---

[1] Under S.C. Code Ann. § 6-11-1420,

> Notwithstanding any other provisions of law, authorized representatives of the Fire Authority having jurisdiction, as may be in charge at the scene of a fire or other emergency involving the protection of life or property or any part thereof, have the power and authority to direct such operation as may be necessary to extinguish or control the fire, perform any rescue operation, evacuate hazardous areas, investigate the existence of suspected or reported fires, gas leaks, or other hazardous conditions or situations, and of taking any other action necessary in the reasonable performance of their duty. In the exercise of such power, the Fire Authority having jurisdiction may prohibit any person, vehicle, vessel, or object from approaching the scene and may remove or cause to be removed or kept away from the scene any person, vehicle, vessel, or object which may impede or interfere with the operations of the Fire Authority having jurisdiction.

him. Id. at 114-15. Defendant Scott then placed Plaintiff under arrest for obstructing the operations of the Columbia Fire Department, in violation of S.C. Code Ann. § 6-11-1450.

Plaintiff alleges that Defendant Scott and Deputy Fairbanks later made defamatory comments about Plaintiff and humiliated him by generating a report containing information that Plaintiff smelled of alcohol and had pushed Defendant Scott's hand away at the scene. Pl. Dep. 144-48. The criminal charge subsequently was dismissed. Id. at 70.

## II.  DISCUSSION

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec.

9, 2009).

## Law/Analysis

A.  Section 1983 Claims

In order to prevail on a § 1983 claim, Plaintiff must show that Defendants deprived him of a clearly established constitutional right that existed at the time of the alleged violation. Carter v. Baltimore County, 95 F. App'x. 471, 475 (4th Cir. 2004).

1.  Qualified Immunity - Defendants seek qualified immunity as to Plaintiff's constitutional claims. Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person could have known. Stickley v. Sutherly, 416 F. App'x 268, 270-71 (4th Cir. 2011) (quoting Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir.2007)). Qualified immunity protects a defendant regardless of whether the government official's error is one of fact or one of law. Id. at 271 (quoting Butz v. Economou, 438 U.S. 478, 507 (1978)). The defense of qualified immunity involves a two-step procedure that asks first whether a constitutional violation occurred and second whether the right violated was clearly established. Gregg v. Ham, 678 F.3d 333, 338-39 (4th Cir. 2012) (quoting Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011)). In determining whether a right is clearly established, courts consider whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 339; see Saucier v. Katz, 533 U.S. 194, 202 (2001). Qualified immunity is typically an immunity from suit, rather than a mere defense to liability, and is effectively lost if a case is permitted to go to trial. Id. (citing Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 275 (4th Cir.2011)). However, if a dispute of material fact precludes

a conclusive ruling on qualified immunity at the summary judgment stage, the district court should submit factual questions to the jury and reserve for itself the legal question of whether the defendant is entitled to qualified immunity on the facts found by the jury. Id. (citing Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir.2005)).

    2.    Probable Cause - Plaintiff asserts that Defendant Scott lacked probable cause to arrest him. Probable cause is defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). In examining the facts and the law, the focus should be limited to only those "facts and circumstances known [to the officer] at the time of the arrest." Gooden v. Howard County, 954 F.2d 960, 965 (4th Cir. 1992) ("In cases where officers are hurriedly called to the scene of the disturbance, the reasonableness of their response must be gauged against the reasonableness of their perceptions, not against what may later be found to have actually taken place."). Two factors govern the determination of probable cause in any situation: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct. Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002). To show an absence of probable cause, Plaintiff must allege a set of facts that made it unjustifiable for a reasonable officer to conclude that he was violating the underlying offense. See id.

    In this case, Plaintiff was arrested for violation S.C. Code Ann. § 6-11-1450, Interference With Operations of Fire Authority. Section 6-11-1450 provides that:

> Any person who obstructs the operations of the Fire Authority in connection with extinguishing any fire, or other emergency, or disobeys any lawful command of the fire official or officer of the Fire Authority who may be in charge at such a scene, or

any part thereof, or any police officer assisting the Fire Authority, is guilty of a misdemeanor and, upon conviction, may be fined not more than two hundred dollars or imprisoned for not more than thirty days.

There is no dispute that Plaintiff was voicing his disapproval of EMS's performance, and that EMS personnel were aware of his criticism. Therefore, the question is whether it was reasonable for Defendant Scott to conclude that Plaintiff's conduct constituted interference with the emergency operations.

Defendant Scott testified in his deposition that he instructed Plaintiff to get back from the scene and that Plaintiff became verbally aggressive. Deposition of Robert Scott (Scott Dep.) 30 (ECF No. 37-5). According to Defendant Scott, Plaintiff was "yelling at the EMS and fire crew about what they needed to, yelling at me and Deputy Fairbanks about if we messed with him, we'll get fired by tomorrow." Id. Defendants also have submitted affidavits of Scott L. Jacobs and Philip Joyner of the Columbia Fire Department. Jacobs avers that he was present overseeing the incident. Joyner avers that he also was present and was assisting the injured pedestrian. Both Jacobs and Joyner state that Plaintiff was upset with the care being rendered and that he loudly expressed his disapproval of the performance of the EMS personnel. Joyner attests that Plaintiff was using profanities and threatening mannerisms, and that Plaintiff became increasingly belligerent prior to his arrest. See generally ECF Nos. 37-6, 37-7.

Plaintiff disputes being confrontational and upset. Pl. Dep. 58. However, it is uncontroverted that Plaintiff spoke loudly enough to be heard from approximately twelve feet away from the emergency scene. It further is uncontested that a EMS worker directed Defendant Scott to remove Plaintiff from the scene. 37-4, 9. In the court's view, Defendant Scott reasonably believed that Plaintiff was interfering with the Fire Authority having jurisdiction over the scene. Thus, probable

cause existed for Defendant Scott to effectuate Plaintiff's arrest. There being no constitutional deprivation, Defendant Scott is entitled to qualified immunity as to this issue. Defendants' motion for summary judgment is granted as to Plaintiff's § 1983 claim that he was arrested without probable cause.

       3.      <u>Excessive Force</u> - Plaintiff also contends that Defendant Scott subjected him to excessive force incident to the arrest. The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free of seizures effectuated by excessive force. <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011) (quoting <u>Schultz v. Braga</u>, 455 F.3d 470, 476 (4th Cir.2006)). Whether an officer has used excessive force is analyzed under a standard of objective reasonableness. <u>Id.</u> (citing cases). The question is whether Defendant Scott's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. <u>See</u> <u>id.</u> (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)). In considering whether an officer used reasonable force, a court must focus on the moment that the force is employed. <u>Id.</u> (citing <u>Elliott v. Leavitt</u>, 99 F.3d 640, 643 (4th Cir.1996). Under <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989), the court must consider (1) the severity of the crime at issue, (2) whether Plaintiff posed an immediate threat to the safety of Defendant Scott or others, and (3) whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight.

       As to the first prong, the severity of the crime, Defendants argue that, even though Plaintiff's conduct constituted only a misdemeanor, he exposed other persons around him to serious risk. Defendants note that an accident scene has particular hazards that make it especially important that bystanders keep their distance. As to the second prong, whether Plaintiff was an immediate threat to the safety of Defendant Scott and others, Defendants contend that Plaintiff became belligerent and

agitated and that he was shouting and cursing the emergency responders. Defendants contend that Defendant Scott reasonably perceived Plaintiff to be a threatening presence. As to the third prong, whether Plaintiff was actively evading or attempting to evade arrest, Defendants contend that Plaintiff actively resisted attempts of Defendant Scott to restrain him.

In contrast, Plaintiff states that the crime for which he was arrested was simply a misdemeanor and thus not a serious crime. Plaintiff argues that he did not have a weapon and was only voicing his opinion. Plaintiff also contends that Defendant Scott deployed the taser as Plaintiff was moving away from the scene. According to Plaintiff, Defendant Scott deployed his taser merely to demonstrate his power over Plaintiff. In support of his position, Plaintiff has submitted an affidavit of Calvin Mills, a bystander at the accident scene. According to Mills, Plaintiff complied with Defendant Scott's orders to move backwards, and then retreated from the situation when Defendant Scott threatened to use his taser. Mills attests that Defendant Scott deployed his taser as Plaintiff was turning away, hitting Plaintiff in the rib cage; then approached Plaintiff a second time, using the taser a second time and hitting Plaintiff in the shoulder; and then deployed the taser a third time in Plaintiff's neck after Plaintiff fell to his knees. Affidavit of Calvin Mills, ¶¶ 7-11.

Based on these disputed facts, the court cannot state that Defendant Scott's conduct was objectively reasonable in light of the facts and circumstances. The court denies Defendants' motion for summary judgment as to this issue. Further, the court will hold in abeyance a determination regarding the legal question of whether Defendant Scott is entitled to qualified immunity.

B.     Torts Claim Act Claims

Plaintiff further seeks damages under the South Carolina Tort Claims Act, S.C. Code Ann. §§ 15-78-10 et seq. The court possesses jurisdiction over Plaintiff's state law claims pursuant to 28

U.S.C. § 1367(a).

    1.    <u>Battery</u> - Plaintiff asserts that he was battered by Defendant Scott. A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient; an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant. <u>Gathers v. Harris Teeter Supermarket, Inc.</u>, 317 S.E.2d 748, 754-55 (S.C. Ct. App. 1984) (citing <u>Herring v. Lawrence Warehouse Co.</u>, 72 S.E.2d 453 (S.C. 1952)). However, police officers are authorized to use reasonable force in effecting a lawful arrest. <u>See</u> <u>State v. Weaver</u>, 217 S.E.2d 31, 34 (1975).

    Defendants contend that the record demonstrates that any and all force used by Defendant Scott was necessary to place Plaintiff under arrest and take him into custody. For the reasons stated hereinabove regarding Plaintiff's excessive force claim, Defendants' motion for summary judgment is denied as to this issue.

    2.    <u>Malicious Prosecution</u> - Plaintiff contends that he is entitled to damages for malicious prosecution. To maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage. <u>Law v. S.C. Dep't of Corrections</u>, 629 S.E.2d 642, 648 (S.C. 2006).

    The court has found that Defendant Scott possessed probable cause to arrest Plaintiff. Plaintiff's claim therefore falls as to the fifth prong of the test articulated in <u>Law</u>. Defendants' motion for summary judgment is granted as to Plaintiff's malicious prosecution cause of action.

3.  Defamation - Plaintiff contends that Defendant Scott disseminated false information in his incident report that Plaintiff was uncooperative and noncompliant at the scene, and that Plaintiff was under the influence of alcohol. Plaintiff also contends that his personal information, picture, and the charge against him were published on the detention center website as well as a publication entitled "Jail Birds."

The tort of defamation permits a plaintiff to recover for injury to his reputation as the result of the defendant's communications to others of a false message about the plaintiff. McBride v. School District, 698 S.E.2d 845, 852 (S.C. Ct. App. 2010) (citing Holtzscheiter v. Thomson Newspapers, Inc., 332 S.C. 502, 508, 506 S.E.2d 497, 501 (1998)). To prove defamation, the plaintiff must show (1) a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Id. (citing Fleming v. Rose, 567 S.E.2d 857, 860 (2002)). The publication of a statement is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Id. (quoting Fleming, 567 S.E.2d at 860).

According to Defendants, Defendant Scott did not disseminate false information. Rather, he set forth his own observations as well as observations of others at the scene. Defendants also contend that there is no evidence that the police incident report was disseminated to third parties or was otherwise utilized for any purpose other than for which it was intended, i.e., memorializing the events in written form. Defendants further assert that, in the event the court finds Plaintiff has stated a claim for defamation, they are entitled to a qualified privilege in that Defendant Scott merely rendered a fair and substantially true account of the events. See Padgett v. Sun News, 292 S.E.2d

30, 31 (S.C. 1982) (discussing fair report privilege).

The court concludes that no reasonable jury could find for Plaintiff as to this issue. The court grants Defendants' motion for summary judgment as to Plaintiff's defamation cause of action.

### III. CONCLUSION

For the reasons stated, the court grants in part and denies in part Defendants' motion for summary judgment. The matter shall proceed to trial as to Plaintiff's § 1983 claim for excessive force and his state law claim for battery.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Judge

Columbia, South Carolina

January 3, 2013